**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**BRENDAN A. HURSON**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-0782**
**MDD_BAHChambers@mdd.uscourts.gov**

May 19, 2023

LETTER TO ALL COUNSEL OF RECORD

Re: *Kenneth B. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-1679-BAH

Dear Counsel:

On July 7, 2022, Plaintiff Kenneth B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 11), the parties' dispositive filings[1] (ECFs 16 and 20), and Plaintiff's response to Defendant's dispositive filing (ECF 23). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Defendant's motion and AFFIRM the Commissioner's decision. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on October 9, 2019, alleging a disability onset of October 16, 2016. Tr. 189–90. Plaintiff's claim was denied initially and on reconsideration. Tr. 97–100, 102–06. On November 3, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 34–61. Following the hearing, on December 13, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12–33. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a brief and Defendant filed a motion for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of October 16, 2016 through his date last insured of December 31, 2020[.]" Tr. 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "right hand deformity of 5th metacarpal with internal fixation hardware, bilateral mild to moderate sensorineural hearing loss, right ear cholesteatoma, status post removal procedure; lumbar spondylosis, lumbar disc herniations with radiculopathy, cervical radiculopathy, sciatica, mild right knee osteoarthritis, chronic asthmatic bronchitis, major depressive disorder, and bipolar disorder." *Id*. The ALJ also determined that Plaintiff suffered from the non-severe impairment of "migraines." Tr. 18. At step three, the ALJ determined that, "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he could never climb ladders, ropes, or scaffolds. He could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He could frequently handle with the right dominant hand. He could have occasional exposure to fumes, dusts, gases, odors, and poor ventilation. He could never be exposed to extreme cold and vibrations and hazards such as dangerous moving machinery and unprotected heights. He could work in a moderate noise intensity level, as defined by the Dictionary of Occupational Titles (DOT). He could understand, remember, and carry out simple instructions and make simple work related decisions. He could work at a consistent pace throughout the workday, but not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas. He could tolerate occasional interaction with coworkers and supervisors and the public. He could tolerate occasional changes in the work setting.

Tr. 20. After considering testimony from a vocational expert, the ALJ determined that Plaintiff

was unable to perform past relevant work as a construction worker (DOT[3] #869.664-014) or an HVAC installer/helper (DOT #637.664-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 27. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 28.

## III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's decision was unsupported by substantial evidence because the ALJ "violated two distinct directives" under Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). ECF 16, at 4, 12–15. First, Plaintiff avers that the ALJ failed to conduct the "detailed assessment" that SSR 96-8p requires. *Id.* at 12. Second, Plaintiff contends that harmful error resulted from the ALJ's failure to adequately consider the psychological evaluation of her treating psychologist, Dr. Nancy T. McDonald, in accordance with SSR 96-8p.[4] *Id.* at 12–15. Defendant counters that the ALJ fully considered the record evidence in assessing Plaintiff's mental RFC assessment, and adequately considered Dr. McDonald's psychological evaluation pursuant to applicable regulations. ECF 20-1, at 5–13. For the reasons

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[4] Plaintiff argues that this error was harmful because the limitation allegedly noted by Dr. McDonald, in conjunction with the vocational expert's testimony regarding time off-task, would be work-preclusive. ECF 16, at 14–15.

explained below, Plaintiff's arguments are unpersuasive.

SSR 96-8p explains that "[t]he psychiatric review technique . . . requires [ALJs] to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184, at *4. The ruling further provides that an ALJ "must remember that the limitations identified in [paragraphs B and C] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.* The ruling then differentiates the psychiatric review technique from the RFC assessment by explaining that "the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" paragraphs B and C. *Id.*; *see also Fears v. Berryhill*, Civ. No. 16-055, 2018 WL 1547365, at *2 (W.D. Va. Mar. 29, 2018) (explaining that the "various functions" to be itemized under SSR 96-8p "all relate to the claimant's ability to work. They include the abilities to: 'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting'") (citations omitted).

Plaintiff first argues that, while the ALJ "properly applied" the psychiatric review technique at step three, she did not similarly comply with SSR 96-8p's guidance regarding mental RFC assessments. ECF 16, at 12. This argument is unavailing. In her decision, the ALJ correctly applied SSR 96-8p by noting that "[t]he mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment of the areas of mental functioning." Tr. 20. While the ALJ's ensuing assessment of Plaintiff's mental functions was not lengthy, a careful review shows that it nonetheless contained the requisite level of detail. First, the ALJ summarized the findings of Dr. McDonald's October 6, 2020, psychological evaluation. Tr. 25. Specifically, the ALJ noted that Plaintiff reported symptoms of depression, anxiety, and mood swings. *Id.* The ALJ also recounted Dr. McDonald's conclusion that Plaintiff "function[ed] within the normal range of intelligence" but showed "problems with concentration and concreteness of thought[.]" *Id.* (citing Tr. 671–76).

The ALJ also considered opinions prepared by two state agency consultants who "opined that [Plaintiff] has moderate mental limitations except for a mild limitation in adapting or managing [him]self." Tr. 26 (citing Tr. 62–82, 86–94). The ALJ found the opinion "persuasive, as moderate mental limitations are consistent with [Plaintiff's] testimony that he feels depressed, has no interest in doing anything, has trouble getting out of bed, and has no appetite." *Id.* But the ALJ also noted that greater limitations were not warranted because Plaintiff had not recently sought treatment. *Id.* Thus, the ALJ concluded that Plaintiff: (1) could "work at a consistent pace throughout the workday, but not at a production rate pace"; (2) could "tolerate occasional interaction" with coworkers, supervisors, and the public; and (3) "could tolerate occasional changes in the work setting." *Id.*

Despite this discussion, Plaintiff contends that the ALJ failed to conduct the "more detailed assessment" required by SSR 96-8p. ECF 16, at 12. But Plaintiff provides no explanation of *how* the ALJ's mental RFC assessment was inadequate, or of what functions the ALJ failed to itemize.

Rather, Plaintiff's argument amounts to one sentence: "The ALJ failed to conduct this more detailed assessment." *Id.* (citing Tr. 20–27). As the Fourth Circuit has made clear, remand is "futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Accordingly, Plaintiff's failure to identify any relevant or contested functions which the ALJ failed to mention weighs against remand.

Plaintiff's second and final argument—that the ALJ "violated" SSR 96-8p by failing to consider Dr. McDonald's psychological evaluation—is also unavailing.[5] ECF 16, at 12. SSR 96-8p provides, in relevant part, that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Accordingly, Plaintiff avers that because the ALJ's RFC determination conflicts with Dr. McDonald's "opinion" regarding his ability to follow one and two-step instructions, the ALJ was required to, but did not, explain why the opinion was not incorporated into the RFC. ECF 16, at 14.

This argument is belied by a careful review of the record. The ALJ's discussion of Dr. McDonald's psychological evaluation incorporates both diagnoses identified by Dr. McDonald: major depressive disorder and "R/0 bipolar II disorder." Tr. 25. The ALJ also discussed the results of the MMSE administered by Dr. McDonald, as well as her conclusion that, while Plaintiff's concentration and concreteness of thought were problematic, his intelligence was normal. *Id.* Certainly, the ALJ's discussion is not a verbatim recitation of Dr. McDonald's evaluation. But the ALJ was not required to provide one, as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). As such, I am satisfied that the ALJ adequately considered Dr. McDonald's evaluation.

Moreover, as Defendant correctly argues, the ALJ was not required to explain her reasons for not adopting Dr. McDonald's "opinion" regarding Plaintiff's ability to follow instructions, as Dr. McDonald offered no such opinion. ECF 20-1, at 6–7. The SSA defines a "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations or restrictions"

---

[5] Specifically, Plaintiff argues that the ALJ "failed to *weigh* Dr. McDonald's" evaluation in contravention of SSR 96-8p. ECF 16, at 12 (emphasis added). To be sure, the ALJ's decision does not specify the weight it accords Dr. McDonald's evaluation. Tr. 26. But because Plaintiff cites to no legal authority relevant to the weighing of opinions, it appears that Plaintiff's brief uses the terms "weigh" and "consider" interchangeably. To the extent that Plaintiff argues that the ALJ erred by failing to *weigh* Dr. McDonald's evaluation, such error is harmless because the ALJ found her RFC limitations to be "consistent" with the evaluation. *See McMullen v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-14-2172, 2015 WL 1393525, at *1 n.1 (D. Md. Mar. 24, 2015) (determining that where an ALJ "implied that he credited" a source's opinion, "any error in [the ALJ's] failure to specify the weight he assigned to the opinion was thus harmless.").

in his ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Here, a careful review of Dr. McDonald's psychological evaluation reveals that she merely observed—without further elaboration—that Plaintiff "was able to follow 1- and 2-step instructions with frequent prompting and reminding." Tr. 672. Such a statement of observation stands in contrast to medical sources' explicit "opinions" or "findings" on the same issue, which have been addressed by this Court in other cases. *See, e.g.*, *Clinton H. v. Kijakazi*, Civ. No. BAH-21-2310, 2022 WL 2793049, at *3 (D. Md. July 15, 2022) ("[T]he ALJ unquestionably credited the state psychological consultants' findings, including 'the conclusion that the claimant retains the capacity for routine, one- and two-step repetitive tasks[.]'"); *Kane v. Berryhill*, Civ. No. TMD-17-971, 2018 WL 4599649, at *8 (D. Md. Sept. 25, 2018) ("[T]he ALJ's failure to address the state agency consultants' opinions regarding Plaintiff's ability to perform one- to two-step tasks is not harmless error[.]").

Additionally, Dr. McDonald's statement appears under a heading titled "Behavioral Observations" and alongside notes concerning Plaintiff's speech, grooming, dress, and affect. Tr. 672. This placement weighs against construing the statement as an opinion. *See, e.g.*, *Gerald v. Kijakazi*, Civ. No. 20-3466, 2021 WL 8014692, at *10 (D.S.C. Oct. 27, 2021) (determining that information in a source's evaluation that appears "under the heading of 'behavioral observations'" does not constitute an "opinion" pursuant to 20 C.F.R. § 404.1513(a)(2)), *report and recommendation adopted sub nom. Milton G. v. Kijakazi*, Civ. No. BHH-20-3446, 2022 WL 669626 (D.S.C. Mar. 7, 2022). Accordingly, the ALJ was not required to explain why the statement was not incorporated into the RFC, as SSR 96-8p only requires an ALJ to explain conflicts between the RFC and "medical source opinions."[6] SSR 96-8p, 1996 WL 374184, at *7. For these reasons, Plaintiff's final argument also fails.

In sum, the ALJ properly considered Dr. McDonald's psychological evaluation and supported her mental RFC assessment with substantial evidence. Because she did so, and because Plaintiff identifies no other errors warranting remand,[7] I will affirm the ALJ's December 13, 2021,

---

[6] Plaintiff correctly notes that the discussion of Dr. McDonald's evaluation provided within the RFC assessment did not incorporate Dr. McDonald's statement regarding Plaintiff's ability to follow instructions; rather, that statement was discussed only at step three. ECF 16, at 14; *see* Tr. 19 (noting at step three that "[d]uring the consultative psychological evaluation on October 6, 2020, the claimant was 'able to follow 1 and 2 step instructions with frequent prompting and reminding.'"); Tr. 25 (discussing Dr. McDonald's evaluation during the RFC assessment but not discussing Plaintiff's ability to follow instructions). But, because this statement did not constitute an opinion for the reasons explained above, the ALJ need not have considered it in determining Plaintiff's RFC. *See* SSR 96-8p, 1996 WL 374184, at *7. Moreover, the ALJ's reliance on Dr. McDonald's statement was proper at step three—an ALJ's "[a]ssessment of functional limitations" is based upon "all relevant evidence," not just medical source opinions. 20 C.F.R. § 404.1520a(c)(1).

[7] Because I find that the issues raised by Plaintiff do not constitute error, I need not consider Plaintiff's argument that any alleged errors were harmful. ECF 16, at 14–15.

decision.

## V. CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment, ECF 20, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge